UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| Patrick J. Daly, | ) | Bankr. Case No. 22-05040 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | |
| Richard J. Zell, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proceeding No. 22-00175 |
| | ) | |
| Patrick J. Daly, | ) | |
| | ) | |
| Defendant. | ) | |

**Opinion on Second Motion to for Rule to Show Cause (Adv. Dkt. No. 69) and on Amended
Second Motion to Compel (Adv. Dkt. No. 83)**

This matter comes before the court upon Plaintiff's Second Motion for Rule to Show Cause

Against Spud Construction, Inc. and 4863 North Ashland, LLC (the "Motion for RSC") (Adv. Dkt.

No. 69) and Plaintiff's Amended Second Motion to Compel Against Debtor/Defendant ("Second

Motion to Compel") (Adv. Dkt. No. 83).

**I. Jurisdiction**

The court has jurisdiction over this matter under 28 U.S.C. § 1334 and Internal Operating

Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter

is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A), matters concerning the administration of the

estate, and § 157(b)(2)(J), objections to discharges.

## II. Background

The Plaintiff, Richard Zell (the "Plaintiff" or "Mr. Zell"), is a pre-petition creditor of Patrick Daly (the "Debtor," "Defendant-Debtor," or "Daly") pursuant to a judgment entered in favor of Zell and against Daly in an action currently pending in the Circuit Court of Cook County, *Richard Zell v. Patrick Daly et al.,* Case No. 2020L001768 (the "state court case"). *See* Amended Complaint (Adv. Docket. 34), ¶ 5; Second Amended Complaint Objecting to Discharge (the "Second Amended Complaint") (Adv. Dkt. 55), Ex. 2, pp. 4–5 (the Citation to Discover assets issued to Daly in the state court case and the judgment order therein).

On February 2, 2021, the state court entered a $607,060.58 judgment with a per diem of $227.03 from December 8, 2020 through February 2, 2021 related to a breach of a promissory note in favor of Mr. Zell and against Daly and various entities Daly was allegedly affiliated with: Silver River Development, LLC-2815-19 North Lincoln Series ("Silver River-Lincoln") and Silver River Development, LLC-2235-39 West Roscoe Series ("Silver River-Roscoe"). *See* Amended Complaint (Adv. Docket. 34), Ex. 2, pp. 4–5; Second Amended Complaint (Adv. Dkt. 55), Ex. 2, pp. 4–5. The state court's February 2, 2021 order granted the Plaintiff's motion for summary judgment with respect to Counts I: breach of contract against Daly, Count II: breach of contract against Silver River-Lincoln, and Count III: breach of contract against Silver River-Roscoe. Second Amended Complaint (Adv. Dkt. 55), Ex. 2, p. 5.

On March 2, 2021, a Citation to Discover Assets was issued addressed to Daly. Second Amended Complaint (Adv. Docket. 55), Ex. 2, p. 2.

On July 8, 2021, a rule to show cause was entered against Daly, Silver River-Lincoln, Silver River-Roscoe, Silver River Development LLC ("Silver River), and SugarWax in the state court case.

Amended Complaint (Adv. Docket. 34), ¶ 24, Ex. 3, p. 2; *see also* Second Amended Complaint (Adv. Dkt. 55), ¶¶ 29–30.

On May 2, 2022, the Defendant-Debtor, Mr. Daly, filed a voluntary petition seeking relief under chapter 7 of the U.S. Bankruptcy Code.  Petition (BK Dkt. 1).  All references to filings in *In re Daly*, Bankr. Case No. 22-05040, will hereinafter be referred to as the "BK Dkt."

On October 31, 2022, Zell filed the instant adversary proceeding seeking denial of discharge under 11 U.S.C. § 727(a)(2)–(a)(5).  Complaint (Adv. Dkt. 1).

On March 7, 2023, the court granted the Defendant-Debtor's Motion to Dismiss (Dkt. 7) the adversary proceeding without prejudice primarily because the complaint did not have a sufficient factual basis to make its allegations plausible.  Order (Dkt. 18), p. 2.  The court permitted the Plaintiff to file an amended complaint by August 11, 2023, ordered the parties to comply with the initial disclosure requirements of Fed. R. Civ. P. 26(a)(1) (as it applies to adversary proceedings), and ordered that all non-expert discovery be completed by August 8, 2023.  *Id.*

On May 30, 2023 , the Defendant-Debtor filed a motion to quash the subpoena issued to him.  Motion to Quash Subpoena For Examination and As It Relates to Certain Requests For Production of Documents (Adv. Dkt. 28) ("Motion to Quash").  The Defendant-Debtor alleged therein that the deadline to take the Federal Rule of Bankruptcy Procedure 2004 ("Fed. R. Bankr. P." or "Bankruptcy Rule") examination had expired, the subpoena failed to allow a reasonable time to comply under Federal Rule of Civil Procedure 45(d)(3)(A)(i) ("Fed. R. Civ. P." or "Rule"), that it exceeded the scope of Bankruptcy Rule 2004, and that because the Defendant-Debtor's motion to dismiss had been granted, there was no adversary proceeding before the court.  *Id.*, pp. 1, 4, ¶ 18.

On June 27, 2023, the Plaintiff filed an amended three-count complaint seeking denial of

discharge under 11 U.S.C. § 727(a)(2) and (a)(4)–(5). *See* Amended Complaint (Adv. Dkt. 34). In the amended complaint, Zell alleges that in the state court proceeding, Daly made various false statements under oath related to disclosure of his assets and the existence of certain bank accounts that should form a basis for denial of discharge under § 727. *Id.*, ¶¶ 23–32.

In December 2023, after the Defendant-Debtor filed a Motion to Dismiss (Adv. Dkt. 38), the Plaintiff filed a Response (Adv. Dkt. 46), the Defendant-Debtor filed a Reply (Dkt. 49), and a hearing was held; the court denied the Motion to Dismiss as to Counts I and II and granted the motion to dismiss as to Count III. *See* December 4, 2023 Order (Adv. Dkt. 54).

On January 4, 2024, the Plaintiff filed the Second Amended Complaint Objecting to Discharge (the "Second Amended Complaint") (Adv. Dkt. 55), a four-count complaint seeking denial of a discharge under §§ 727(a)(2), (a)(3), (a)(4)(A), and (a)(5). *See* Second Amended Complaint (Adv. Dkt. 55), ¶¶ 48–51. In this complaint, Plaintiff asserts, that in order to evade creditors, Daly has not maintained a bank account in his name since the Plaintiff obtained its judgment in February 2021 and that an entity owned by Daly's daughter, 4863 N. Ashland, LLC ("Ashland"), transferred money to an entity that is solely owned by Daly, Spud Construction, Inc. ("Spud"), in excess of $150,000, which was used to pay Daly's personal expenses. *Id.*, ¶¶ 6, 10, 12, 25, 26(vi). Thus, the Plaintiff alleges Daly's daughter is a straw owner of Ashland and Daly is the equitable owner and "control person" of Ashland. *Id.*, ¶¶ 25, 26(vi). The Plaintiff alleges, among other things, that Daly grossly understated his income in his bankruptcy documents, since Spud paid many of Daly's personal expenses, but Daly failed to disclose said payments as income on his Schedule I. *Id.*, ¶¶ 10–16.

The Defendant-Debtor filed an answer thereto and raised four affirmative defenses. *See*

Answer and Affirmative Defenses of Defendant, Patrick J. Daly, to Plaintiff's Second Amended Complaint Objecting to Discharge (the "Answer") (Adv. Dkt. 57). In his answer, Daly denied having an ownership interest in Ashland, but admitted to having an interest in Spud. *Id.*, ¶ 6, pp. 2–3.

A status hearing was held on January 30, 2024, at which the court ruled that discovery would close on May 7, 2024.

The Plaintiff filed a Reply to Defendant, Patrick J. Daly's Affirmative Defenses ("Reply to Affirmative Defenses") (Adv. Dkt. 60).[1]

On April 26, 2024, the Plaintiff filed a Combined Motion to Compel against Daly and for Rule to Show Cause against Spud Construction, Inc. ("Spud") and 4863 North Ashland, LLC ("Ashland") and to Continue Discovery Deadline (the "First Motion to Compel and Motion for RSC") (Adv. Dkt. 61). That motion alleged that in March 2024, the Plaintiff issued Interrogatories and Request for Production of Documents (collectively, the "Discovery Requests") to the Defendant-Debtor and issued subpoenas to Spud and Ashland, which are entities affiliated with the Debtor. *Id.*, ¶¶ 1–4. The subpoenas, interrogatories, and request for production of documents related to the disclosure of assets and sought financial information (e.g., bank accounts, loan documents, etc.). *See* First Motion to Compel and Motion for RSC (Adv. Dkt. 61), Ex. 1, pp. 2-26, Ex. 2, pp. 2-13.

The Plaintiff asserted that in April 2024, the Defendant-Debtor asked for an extension to April 15, 2024 to comply with the Discovery Requests and then, on April 15, 2024, requested an

---

[1] The Defendant-Debtor's affirmative defenses were that the complaint did not state a cause of action upon which relief could be granted and that the Plaintiff could not meet its burden of proof as to Counts I, II and IV. See Answer (Adv. Dkt. 57), pp. 20–21. The Plaintiff denied all four affirmative defenses. See Reply to Affirmative Defenses (Adv. Dkt. 60), pp. 1–3.

additional week to comply, which the Plaintiff agreed to. *Id.*, ¶¶ 5-6. The Plaintiff alleged that at the parties' Rule 201(k) conference on April 16, 2024, the Defendant-Debtor's attorney indicated he would let Plaintiff's counsel know if he would be representing Spud and Ashland; however, he failed to do so. *Id.*, ¶ 7.

The Plaintiff argued that pursuant to thesubpoenas, responsive documents were due on April 11, 2024 and no representatives of the subpoena respondents had requested additional time to produce responsive documents. *Id.*, ¶ 8. Thus, the Debtor, Spud, and Ashland had failed to timely comply with their discovery and subpoena obligations and sought entry of an Order compelling Debtor to complete responses and document production within seven days and entry of a rule to show cause as to why Spud and Ashland should not be held in contempt for failing to comply with the subpoenas. *Id.*, ¶¶ 3–14.

The Debtor filed a Notice of Objection (Adv. Dkt. 62) to the motion. On May 7, 2024, the court ordered that the Debtor complete outstanding discovery by May 21, 2024, and extended the discovery deadline to August 2, 2024. Order (Adv. Dkt. 66), p. 1. A status hearing on the First Motion to Compel and Motion for RSC (Adv. Dkt. 61) was set for August 27, 2024. Order (Adv. Dkt. 68).

On June 18, 2024, the Plaintiff filed its Second Motion for Rule to Show Cause Against Spud Construction Inc. and 4863 North Ashland, LLC ("Second Motion for RSC") (Adv. Dkt. 69), seeking to compel Spud and Ashland to comply with the subpoenas. The Plaintiff alleged that pursuant to the subpoenas issued in March, responsive documents were due in April and the deadline to complete discovery was August 2, 2024; however, Spud and Ashland had produced no documents or written responses to the subpoenas. *See* Second Motion (Adv. Dkt. 69), ¶¶ 1-12.

Spud and Ashland filed a Response thereto in which they argued the subpoenas should be quashed because the Plaintiff issued a third-party citation to discover assets to Ashland in state court and the Plaintiff received requested documents and interrogated the manager of Ashland in connection with that proceeding. Response of Spud Construction, Inc. and 4863 North Ashland LLC to Motion of Plaintiff For Rule to Show Cause and Motion to Quash Subpoena (Adv. Dkt. 77) ("Response to Second RSC"), pp. 1, 5. Spud argued the documents requested in the subpoena to it were subsumed by the documents requested from Mr. Daly in the adversary.

On July 30, 2024 Plaintiff's Second Motion for Rule to Show Cause was granted, and a Rule to Show Cause (the "Spud Rule") was thereby entered against Spud and its President and/or sole shareholder, Patrick Daly (the "Debtor," "Defendant-Debtor," or "Daly"). Order (Dkt. 80). That day, a Rule to Show Cause (the "Ashland Rule") was also entered against Ashland and its alleged equitable owner, Mr. Daly. *Id.* A hearing on the Spud Rule and the Ashland Rule was initially set for September 10, 2024 at 1:30 p.m., at which Mr. Daly was required to appear in-person as the alleged representative of Spud and Ashland.

On August 29, 2024, the Plaintiff filed an additional Motion to Compel Against Debtor/Defendant (Adv. Dkt. 82) and an Amended Second Motion to Compel Against Debtor/Defendant (the "Second Motion to Compel") (Adv. Dkt. 83). On May 23, 2024, the Debtor produced Answers to Plaintiff's Request for Production of Documents and Answers to Plaintiff's First Set of Interrogatories. Second Motion to Compel (Adv. Dkt. 83), ¶ 5, Ex. 3, pp. 1–28. However, the Plaintiff alleged that these answers were only partial written responses and responsive documents and these responses were unresponsive, evasive, and incomplete. *Id.*, ¶¶ 5-6. The Plaintiff alleged that on July 1, 2024, Plaintiff's counsel emailed Defendant-Debtor's counsel, Mr.

Schechter, a detailed synopsis of the various defects and deficiencies in the Discovery Responses (the "Discovery Email"). *Id.*, ¶ 7, Ex. 4. The Plaintiff asserted that after the Defendant-Debtor's counsel sought multiple extensions of time to respond to the Discovery Email, the Plaintiff's counsel informed him that the response to the Discovery Email must be received by August 28, 2024, and no further extensions would be granted. *Id.*, ¶ 8. However, Defendant-Debtor's counsel failed to respond to the Discovery Email in any fashion by August 28, 2024. *Id.*, ¶ 9.

On September 10, 2024, the court set an in-person evidentiary hearing for October 8, 2024 regarding the issues raised in the Second Motion for Rule to Show Cause (Adv. Dkt. 69) and the Second Motion to Compel (Adv. Dkt. 83). *See* September 10, 2024 Order (Adv. Dkt. 88). Mr. Daly was required to appear in-person and testify under oath about the discovery sought, discovery responses, and related issues. *Id.*

At the October 8, 2024 hearing, Mr. Daly was first asked about his responses to the Interrogatories and Request for Production of Documents (collectively, the "Discovery Requests"). Those responses can be found in the Second Motion to Compel (Adv. Dkt. 83), Ex. 3, pp. 2–28.

In-person hearings on this matter were also held on October 11, 2024 and November 8, 2024.

At the October 8, 2024 hearing, both parties summarized the crux of the dispute. The Plaintiff's counsel, Rakesh Khanna, asserted that the Plaintiff believes the Defendant-Debtor, Patrick J. Daly, has not disclosed his own interest in the entity called 4863 North Ashland, LLC ("Ashland"). Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 5–6. Mr. Khanna also alleged that although Secretary of State records show that Mr. Daly's daughter, Mary Daly, is the managing member of Ashland, the Plaintiff believes "[t]hat Mary Daly is simply a straw owner for the benefit of Mr. Daly." *Id.*, p. 6.

He asserted that Mary Daly did not know information that a managing member of an LLC

Case 22-00175   Doc 97   Filed 04/11/25   Entered 04/11/25 16:22:36   Desc Main
Document   Page 9 of 51

"should have" that she "had no knowledge of." *Id.*, pp. 6–7. During the Deposition of Mary Daly in the state court matter, Mary Daly said she was the managing member of Ashland, which she said is a single-asset entity that owns the building at 4863 North Ashland. P's Ex. 16, pp. 19–20. However, Mary Daly did not know how much money she purchased the property at 4863 North Ashland for, how many loans were on the property, and whether she and the other members of Ashland, Thomas Zima and Rick Heidener, were supposed to put money into the partnership. *Id.*, pp. 26–44.

At the October 8, 2024 hearing, Mr. Khanna asserted that Mr. Daly did not disclose significant income in his bankruptcy Schedules, Schedule I, which relates to third parties paying for Mr. Daly's personal expenses. Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), p. 7. He argued under *In re Leongas*, 628 B.R. 71 (Bankr. N.D. Ill. 2021), if a third party pays for personal expenses of a debtor, those payments constitute income. Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 7–8. He alleged that Mr. Daly has not maintained a bank account in his own name since the Plaintiff obtained the state court judgment. *Id.*, p. 8.

Mr. Schechter asserted that the complaint raised two issues: (1) whether Mr. Daly disclosed all his income and (2) whether he has an ownership interest in 4863 North Ashland. *Id.*, p. 13.

### III. Analysis

Rule 37, made applicable to this proceeding by Bankruptcy Rule 7037, permits a party to "move for an order compelling disclosure or discovery."[2] Fed. R. Civ. P. 37(a). Rule 37 further provides that "[a] party seeking discovery may move for an order compelling an answer, designation,

---

[2] This rule provides that motions for an order to a party must be made in the court where the action is pending, whereas motions for an order to a nonparty must be made in the court where discovery is taken. Fed. R. Civ. P. 37(a)(2).

-9-

production, or inspection . . ." if "(iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." *See* Fed. R. Civ. P. 37(a)(3)(iii)–(iv). Fed. R. Civ. P. 37 applies to adversary proceedings. *See* Fed. R. Bankr. P. 7037.

"Rule 37(a)(4) treats an evasive and incomplete answer in discovery as equivalent to no answer, and thus a failure to comply with court-ordered discovery." *In re Wolf*, 566 B.R. 233, 235 (Bankr. N.D. Ill. 2017) (citing *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016)); see also Fed. R. Civ. P. 34(a)(4). "[T]he Seventh Circuit has stated that 'when . . . the fact that answers [to discovery] are evasive or incomplete cannot be determined until further proceedings have been conducted to obtain the information later determined to have been withheld, the evasive or incomplete answers are tantamount to no answer at all, and [R]ule 37(d) is applicable.'" *In re Fetla's Trading Post, Inc.*, Ch. 11 Case No. 04-12231, Adv. No. 05-00926, 2006 WL 1234228, at *12 (Bankr. N.D. Ill. May 4, 2006) (citing *Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145, 155 (7th Cir.1976)). Federal courts have held that "[t]he party moving to compel discovery has the burden of proving that the opposing party's answers were incomplete." *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007) (citations omitted).

Fed. R. Civ. P. 26, made applicable to adversary proceedings by Fed. R. Bankr. P. 7026, explains when a party must supplement or correct its disclosure or discovery response:

> (1). *In General.* A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the

disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1).

Courts have "broad discretion" in all discovery matters. *See In re Express Grain Terminals, LLC*, No. 21-11832-SDM, 2022 WL 1136313, at *4 (Bankr. N.D. Miss. Apr. 15, 2022) (citing *In re Feldman*, 608 B.R. 426, 436 (Bankr. E.D. Penn. 2019)). When parties violate discovery orders, Federal Rule of Bankruptcy Procedure 7037 "allows for a broad range of sanctions against counsel and parties." *Id.* (citing Fed. R. Civ. P. 37; Fed. R. Bankr. P. 7037). Specifically, Fed. R. Civ. P. 37(b)(2)(A) provides that if a party, a party's officer, director, or managing agent, or a witness fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court may issue "further just orders" that may include:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*See* Fed. R. Civ. P. 37(b)(2)(A).

In addition, Fed. R. Civ. P. 16, made applicable to adversary proceedings by Fed. R. Bankr. P. 7016, provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . (C) fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C); Fed. R. Bankr. P. 7016.

Fed. R. Civ. P. 45 addresses a nonparty's failure to comply with a subpoena. Rule 45(g) provides that "[t]he court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). The Advisory Committee Notes regarding the 2013 Amendment to Rule 45 state that "[s]ubdivision (g) carries forward the authority of former subdivision (e) to punish disobedience of subpoenas as contempt."

The Advisory Committee Notes include the following:

> The rule is also amended to clarify that contempt sanctions may be applied to a person who disobeys a subpoena-related order, as well as one who fails entirely to obey a subpoena. In civil litigation, it would be rare for a court to use contempt sanctions without first ordering compliance with a subpoena, and the order might not require all the compliance sought by the subpoena. Often contempt proceedings will be initiated by an order to show cause, and an order to comply or be held in contempt may modify the subpoena's command. Disobedience of such an order may be treated as contempt.

Fed. R. Civ. P. 45 advisory committee's note to 2013 Amendment.

### IV. Discussion

The Plaintiff has filed two motions seeking to compel the Defendant-Debtor to comply with outstanding discovery requests, Interrogatories and Request for Production of Documents (collectively, the "Discovery Requests").

The Plaintiff has filed two motions for contempt against the Defendant-Debtor, alleging Mr. Daly failed to timely and adequately respond to the Interrogatories and Request for Production of Documents. In ruling on the Plaintiff's initial motion, its Combined Motion to Compel against Daly and Spud and for Rule to Show Cause against Spud and Ashland (Adv. Dkt. 61), the court issued an Order on May 7, 2024 requiring a party, the Defendant-Debtor, to complete outstanding discovery within 14 days from the entry of the order (i.e., by May 21, 2024) and reset the discovery deadline to August 2, 2024. Order, Dkt. 66. On May 23, 2024, two days after the deadline set by the court, Defendant-Debtor provided written responses to the Interrogatories and Request for Production of documents. Second Motion to Compel (Adv. Dkt. 83), ¶ 5, Ex. 3, pp. 1–28.

More importantly, Rule 37(a)(4) provides that "[a]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." *See* Fed. R. Civ. P. 37(a)(4). The Plaintiff alleges that the answers and responsive documents provided by Daly and the subpoenaed parties were unresponsive, evasive, and incomplete. *Id.*, ¶¶ 5-6.

For the reasons explained herein, since the court finds the discovery responses herein were not only late but also evasive, the court finds that entry of a default judgment under Fed. R. Civ. P. 37(b)(2)(A)(vi) is appropriate.

The court will first highlight a few of the interrogatories and requests for production that illustrate the issues herein. Then, it will discuss the issues with the subpoenaed parties' failure to provide responsive documents.

### A. The Interrogatories

Interrogatory #1 sought information about individuals and entities that Daly had an affiliation with—defined as a relationship with an individual or business entity in the nature of a shareholder,

member, officer, director, borrower, manager, employee, and/or independent contractor—as well as the nature of the affiliation, the date Daly became affiliated with the entity, and the address of the individual or entity. *See* Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p. 18.

In response, Daly's answer stated that he became affiliated with Spud Construction, Inc. ("Spud") on August 31, 2012 and was its president and sole shareholder; he became affiliated with Silver River Development, LLC ("Silver River") on November 23, 2015 and was its member and manager; he was affiliated with Silver River Development, LLC-3313 N. Oakley Series ("Silver River-Oakley") as its member and manager;[3] he became affiliated with Silver River Development, LLC-4869 N. Ashland Series ("Silver River-Ashland") on September 6, 2017 and was its member and manager; he became affiliated with Silver River Development, LLC-2815-19 N. Lincoln Series ("Silver River-Lincoln") on September 21, 2017 and was its member and manager; he became affiliated with 5647-53 N. Clark LLC on May 22, 2006 and was its member and manager; he became affiliated with Silver River Development, LLC-2235-39 W. Roscoe Series ("Silver River-Roscoe") on January 4, 2019 and was its member and manager; and he became affiliated with West Carmen, LLC in December 2013 and was its member and manager. *Id.*, pp. 18–19.

In his answer, Daly also stated that "[o]n or about August 1, 2019," he owned "a 50% percent interest in Silver River Development, LLC-4869 N. Ashland Series" ("Silver River-Ashland") and "[a]t that time, for valuable consideration, Defendant [Daly] transferred a portion of his membership interest to Thomas Zima and Heidner Properties." Id., p. 19. After that transfer and based upon the First Amended Operating Agreement of Silver River-Ashland, Daly owned 15.50% of the LLC. *Id.*

---

[3] No date that Defendant became affiliated with Silver River-Oakley was listed. *See* Second Motion to Compel (Adv. Dkt. 83), Ex. 3, pp. 18–19.

Interrogatory #2 asked for information about loans from Defendant and/or all entities that Mr. Daly had an affiliation with to any person or entity made outside the ordinary course of business between February 2, 2021 to the present. Second Motion to Compel (Adv. Dkt. 83), Ex. 3, pp. 18-19. Mr. Daly's answer stated "[a]t this time, Defendant does not recall any loans outside the ordinary course of business responsive to this interrogatory." *Id.*, p. 19.

At the October 8, 2024 hearing, Mr. Daly testified that since January of 2021, he has not become affiliated with any entities other than the entities listed in his answer to interrogatory #1. Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), p. 18. He also testified that 4869 North Ashland, LLC did not have any affiliation with 4863 North Ashland, LLC, there was not any reason monies would go back and forth between those two entities, and there was not work that one entity did for the other. Id., pp. 25–26. However, $214,000 was transferred from 4869 North Ashland, LLC to 4863 North Ashland, LLC. Id., p. 32–33. Mr. Daly said that payment consisted of Mr. Heidener's investment into 4869 North Ashland LLC. *Id.*, p. 33. He said Mr. Heidener was paying his profits of 4869 North Ashland, LLC and "he asked for his investment to be transferred to the next." *Id.*, p. 33.

Daly was evasive about his involvement with the $214,000 deposit:

> Q.      So you were the one responsible for depositing 214,000 into the account of 4863, isn't that correct?
>
> A.      No. As like Mr. Schechter says, it was actually 4869 Ashland, LLC, and --
>
> Q.      You're --
>
> A.      -- Silver River that deposited it. I was working on behalf of them.
>
> Q.      Right. But you were the one that caused it to be deposited on behalf of 4869 North Ashland, right?
>
> A.      On behalf of 4869, yes.

Q.    All right.

Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), p. 37.

At the hearing, Mr. Khanna clarified that loans that were outside the ordinary course of business by these entities included payment of Mr. Daly's "personal expenses." Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), p. 19. When asked whether these entities had made any sort of loan or transfer of monies outside the ordinary course of business to him, including payment of his personal expenses, Mr. Daly testified: "No, they haven't." *Id.* However, when asked: "Spud has not paid your personal expenses from February 2, 2021, to the present?," Mr. Daly responded "Well, Spud is where -- is where I derive my income from, yes" and testified that "Spud Construction has paid some expenses, yes." *Id.*, pp. 19–20. Daly testified that "[a]t the end of the year, everything would be totaled up that was paid to me, and taxes would be filed personally on that portion so -- and at that point, what's the difference between Spud Construction paying me and me paying the bills?" *Id.*, p. 21. He also testified that "on occasion," Spud had paid his utility bills and had definitely paid his car payments in the past. Oct. 11, 2024 Hr'g. Tr. (Adv. Dkt. 94), pp. 157–60.

Interrogatory #3 asked about Daly's sources of income, including payment of personal expenses or money Daly has borrowed:

> 3. **Identify all sources of income** including, but not limited to payment of Defendant's Personal Expenses, that Daly has had and/or monies that he has borrowed, during the Relevant Period, **including, but not limited to, the basis for that income and/or borrowed money,** the identity entity [sic] and/or person that is the source of that income and/or borrowed monies, **how that income and/or borrowed monies was paid to Daly, the bank accounts in which that income and/or borrowed monies was deposited, the activity or services rendered by Defendant to earn that income and/or borrowed monies, and/or the dates Defendant rendered the services or activity to earn the income.**

*See* Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p. 20 (emphasis added).

-16-

In response, Mr. Daly gave an incomplete answer because he did not state the basis for the income or borrowed funds, how the funds were paid to him, or give details about the bank accounts involved or the activities or services he rendered to earn the income or borrowed funds:

> **Answer:** Defendant objects to the use by Plaintiff of the term "payment of Defendant's Personal Expenses" being included in the interrogatory asking for identification of sources of income. This implies that "payment of Defendant's Personal Expenses" is income. Defendant's source of income is Spud Construction, Inc. On occasion, Defendant has borrowed monies from Spud and/or family members to pay Personal Expenses.

*Id.*

At the October 8, 2024 hearing, Mr. Khanna asked Mr. Daly how he could reconcile his answer to interrogatory #2 that he does not remember any payments outside the ordinary course of business of Spud with his answer to interrogatory #3, which stated that he borrowed money from Spud. *Id.*, 22–23. In response, the Defendant-Debtor initially testified "I don't borrow money from Spud." *Id.*, p. 23.

Then Daly testified that it was easier for him to pay the bills, total it up at the end of the year, and file taxes on that amount, and "I just had taken what I need," stating that his own bank accounts had "faded away" and implying that he used Spud's bank accounts to pay himself. *Id.*, pp. 23–24. Despite this practice, he also admitted that he has not filed a tax return for Spud since 2020. *Id.*, p. 23. Daly said he had not reconciled anything with any tax returns since 2020. *Id.*, pp. 23–24. The parties' counsel disagreed about whether Daly's answers and testimony that Spud paid his personal expenses was tantamount to stating that Daly borrowed money from Spud. *Id.*, p. 97–99.

Mr. Khanna subsequently asked Mr. Daly for more details about his answer to interrogatory #3:

Q.      I'm asking the witness which of those entries on the bank statements are your personal expenses? Did you ever provide me that information?

A.      I don't remember whether I did or not.

Q.      Okay. So you were just leaving it up to me to figure out which of those bank statements contained entries for your personal expenses, is that correct?

A.      I don't know if I was thinking that or not.

Q.      Okay. But despite this interrogatory answer, you don't detail the date, the amounts or anything else relating to your personal expenses that are found allegedly in those Spud Construction statements, correct?

A.      Yeah. I went through it and put it on the bankruptcy papers.

*Id.*, pp. 100–101.

At the continued hearing on October 11, 2024, Daly testified that Spud had paid his personal expenses in the form of paying his utilities bills. Oct. 11, 2024 Hr'g. Tr. (Adv. Dkt. 94), pp. 157–58. He. testified that "[o]n occasion, all those utilities were paid by Spud as income for me." *Id.*, p. 158. He said "in the past," Spud has paid his car payments. *Id.*, pp. 159–60.

When asked about which family members he had borrowed money from, Daly testified that "I may have borrowed money from my daughter[s] Kathleen or Mary if they had it." Oct. 11, 2024 Hr'g. Tr. (Adv. Dkt. 94), pp. 142–43.

At the subsequent hearing on November 8, 2024, the Plaintiff's counsel, Mr. Khanna, argued that Daly's discovery responses and testimony regarding interrogatory #2 conflicted with his response and testimony with respect to interrogatory #3. Nov. 8, 2024 Hr'g. Tr. (Adv. Dkt. 96), p. 257.

The court finds that the Plaintiff met its burden to prove that Daly's answers to interrogatories #2 and #3 were incomplete. See *Equal Rights Ctr.*, 246 F.R.D. at 32. Regarding

interrogatory #2, the Plaintiff explained that a loan outside the ordinary course of business included Spud paying Daly's personal expenses and Daly admitted that Spud had paid his personal expenses. Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), p. 19–20. However, the answer to interrogatory #2 did not disclose Spud paying Daly's personal expenses. Second Motion to Compel (Adv. Dkt. 83), Ex. 3, pp. 18–19.

Interrogatory #3 asked about "all" of Daly's sources of income and for various details about Daly's income, including "the basis" for that income and/or borrowed money, . . . how that money was paid to Daly, and the bank accounts in which that income and/or borrowed monies was deposited, the activity or services rendered by Defendant to earn that income and/or borrowed monies, and/or the dates Defendant rendered the services or activity to earn the income." *See* Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p. 20 (emphasis added). Daly's answer to interrogatory #3 disclosed only that Spud Construction, Inc. was his source of income, but did not disclose when or how Spud paid Daly. Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 23–24, 100–101. Daly's testimony did not supplement or correct his answer. He also did not disclose that he may have borrowed money from his daughters, Kathleen or Mary, in his answer, and his answer and his testimony did not explain the basis for the borrowed funds and how the money was paid to him. Oct. 11, 2024 Hr'g. Tr. (Adv. Dkt. 94), pp. 142–43. The answer was incomplete, since interrogatory #3 asked for, *inter alia*, the "identity" of the entity and/or person that is the source of Daly's income and/or borrowed monies and "how that income and/or borrowed monies was paid to Daly." *See* Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p. 20 (emphasis added).

Interrogatory #10 appears to ask about the Defendant-Debtor's involvement with 4863 North Ashland, LLC, although it is not entirely clear:

10. Describe in detail all involvement that Defendant has and/or had with 4863 LLC, including, all persons and/or entities that Defendant communicated with regarding 4863 LLC, the purpose of those communications, the dates of those communications, and the capacity Defendant was communicating with the person and/or entities, during the Relevant Period.

*See* Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p. 22.

In response, Daly gave an incomplete answer because he did not give details about the persons/entities he communicated with or the purpose and dates of said communications:

> **Answer:** As president of Spud Construction, Inc., who was the general contractor to 4863 LLC, Defendant communicated with the members and manager of 4863 LLC. Defendant cannot recall the dates of those communications, but the general purpose would have been on behalf of the general contractor.

*Id.*

However, at the October 8, 2024 hearing, when asked who he communicated with in relation to Spud, Daly's testimony was evasive and he disclosed speaking to persons not discussed in his interrogatory answer:

> Q.     In Number 10, this one asks for any involvement that you or your entities had with 4863 North Ashland, including the names of the persons you communicated, the dates of the communications, and the capacity.
>      I asked, also, did -- you say that you communicate with people as a general contractor, Spud, for 4863 North Ashland, LLC. You say you don't recall the dates of the communications, but you don't indicate who you communicated with.
>      Who would be the people you communicated with regarding your capacity as it relates to Spud's capacity as general contractor for that entity?
>
> A.     Uhm --
>
> Q.     Who did you communicate with -- I'm sorry.
>
> A.     Who did I communicate with? Uhm, at Spud Construction? Probably all the members.
>
> Q.     You communicated with -- who are the members?

A.     Heidner.

Q.     Okay.

A.     Zima.

Q.     Okay.

A.     Not so much with my daughter.

Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 38–39.

However, Daly then contradicted that testimony about his communications with his daughter:

Q.     Your daughter is the managing member of 4863 North Ashland, LLC, right?

A.     Yes.

Q.     And you just testified you didn't communicate with her so much --

MR. SCHECHTER: Objection. That's not what he said.

THE COURT: Overruled.

BY THE WITNESS:
A.     I -- of course I communicated with her. She was the managing member, yes.

BY MR. KHANNA:
Q.     Okay. But you just testified not -- you just said the words I communicated with Heidner, Zima, not so much with your daughter. What did you mean by not so much with your daughter?

A.     She's not as much of a -- probably maybe not as much involved. She was the managing member. She was doing the paperwork on it.

Q.     Okay.

A.     That was pretty much it.

*Id.*, pp. 39–40.

At that hearing, with regard to interrogatory #10, Daly also disclosed that he spoke to entities

not disclosed in his interrogatory answer:

> Q. Other than the managers and members of 4863, who else did you communicate with regarding your capacity as president of Spud Construction relating to the construction of that property?
>
> A. I communicated with Quality Excavation.
>
> Q. And what is the name of that person?
>
> A. I don't remember.
>
> Q. Is it Grainne Keane?
>
> A. There are a number of people there. I don't remember.
>
> Q. Okay. You don't disclose that you had conversations with them in your interrogatories, do you?
>
> A. I don't remember.
>
> Q. Well, it's right there. Look in your answer. You don't disclose them, do you?
>
> A. That was part of my Spud Construction. It had really nothing to do with 4863 Ashland.
>
> Q. But your attorney doesn't object, so please answer the question.
>
> A. So what's the question again?
>
> Q. You don't disclose -- other than the managers and members of 4863, you don't disclose who else you communicated with, isn't that correct?
> You don't disclose you communicated with anyone from Quality Excavation here, do you?
>
> A. Are we talking about Spud Construction or 4863 Ashland?
>
> Q. We're talking in your capacity as president of Spud.
>
> A. Okay.

Q.     Who did you communicate with relating to the property at 4863?

A.     Relating to the property?

Q.     Yes.

A.     On the improvements on the property, I communicated with Quality Excavation.

Q.     Who else?

A.     Uhm, probably the concrete company.

*Id.*, pp. 45–47.

He testified that he did not remember which concrete company he used there and explained that Quality Excavation was "a demo and excavation company" that "did a little bit of the work" at 4863 North Ashland. *Id.*, p. 47.

He later testified that Spud Construction had a contract to be the general contractor and the subcontractor for 4863 North Ashland *Id.*, pp. 56–58.

At the hearing on November 8, 2024, the Plaintiff's counsel asserted that Daly's discovery responses regarding interrogatory #10 were vague and evasive because Daly only disclosed that he spoke to some members without discussing the substance or date of the communications. Nov. 8, 2024 Hr'g. Tr. (Adv. Dkt. 96), p. 258. More importantly, he argued that, on the witness stand, Daly testified that he spoke to individuals about construction, but had not disclosed speaking to said individuals in his answer. *Id.*, p. 259.

The court finds the responses to interrogatory #10 was incomplete, given that Daly testified that he spoke with three individuals (Heidner, Zima, and his daughter) and a business entity (Quality Excavation), but did not disclose speaking with these people or entity in his response. *See* Fed. R.

-23-

Civ. P. 37; Fed. R. Bankr. P. 7037. Since "Rule 37(a)(4) treats an evasive and incomplete answer

in discovery as equivalent to no answer, and thus a failure to comply with court-ordered discovery,"

Daly has failed to comply with court-ordered discovery herein. *See In re Wolf*, 566 B.R. 233, 235

(Bankr. N.D. Ill. 2017) (citation omitted).

Interrogatory #16 sought information about entities that Daly was affiliated with had filed

tax returns or requested extensions:

> 16. Have all entities that Daly has an Affiliation, either currently, or had an Affiliation with, during the Relevant Period, filed annual tax returns and/or requested, in writing, extensions of time to file tax returns with the IRS, since those entities were formed? If not, identify which such entity did not file tax returns and/or written requests for extensions, which years they did not file tax returns and/or written requests for extensions, and all reasons they did not file tax returns and/or written requests for extensions.
>
> **Answer:** Spud Construction, Inc. filed tax returns through 2020.

Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p.. 24, ¶ 16 (emphasis in original).

Although Mr. Daly testified at the October 8, 2024 hearing that extensions were filed, he had

failed to produce them:

> Q.   Okay. Number 16. This asks about tax returns filed by you and any of the entities you listed in Interrogatory Number 1.
> Here you state that only Spud has filed tax returns for 2020. It goes on to say did you file extensions for any of the other entities that you listed in Number 1 for tax returns.
>
> A.   I know there were extensions filed, yes.
>
> Q.   Okay. But you never provided me with those extensions, correct? I asked for those, right?
>
> A.   I guess not.

*See* Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 75–76.

At that hearing, he also testified that Silver River-Roscoe and Silver River Development, LLC did not file tax returns. Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 79. When asked if he filed extensions for tax returns, Daly said "[p]robably not." *Id.*

Mr. Daly also testified about the Silver River Development, LLC-2815-19 North Lincoln Series entity ("Silver River Development, LLC-2815-19 North Lincoln Series" or "Silver River-Lincoln"). Pre-petition, the Plaintiff (Mr. Zell) obtained a judgment against Mr. Daly, Silver River-Lincoln, and another entity Daly was affiliated with, Silver River Development, LLC-2235-39 West Roscoe Series ("Silver River-Roscoe"), in 2021. *See* Second Amended Complaint (Adv. Dkt. 55), Ex. 2, pp. 4–5.

At the trial, Daly testified that the Silver River Development Lincoln Series entity owned the Lincoln property and took out a construction loan with Countryside Bank. Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), p. 80. He testified that the subcontractors were paid from Silver River-Lincoln. *Id.* He testified that units of the Lincoln property were sold. *Id.*, 80–81. Tax returns were not filed, he said, because "[t]ax returns don't get filed until the property is 100 percent sold and there are profits to show and there are K-1s and whatever else to hand to people and file the taxes on, and that's how we've always done them." *Id.*, p. 82.

Daly also testified that Sedgehill Capital had a first mortgage on the property that was owned by Silver River-Roscoe entity. *Id.*, 82–83. After mortgage payments were not paid, that property was foreclosed on and Sedgehill Capital took possession of the property. *See id.*, pp. 82–84.

Daly testified that tax returns were not filed for Silver River-Oakley and he did not have a

bank account for the Silver River-Oakley property. *Id.*, pp. 85-86.[4]

Daly testified that Spud Construction, Inc. paid Sedgehill Capital, but the payments were for

a different property, which was located at 5647 North Clark Street. *Id.*, p. 85.

He initially testified that tax returns were filed for 5647-53 North Clark Street. *Id.*, p. 86.

However, his testimony regarding whether tax returns were filed for that entity and when said returns

were filed was evasive and confusing. Initially, he testified that he produced the tax returns for that

entity, then said "I don't remember if we did or not." *Id.*

When Plaintiff's counsel, Mr. Khanna, asked Daly more directly for details about tax returns

for 5647-53 North Clark Street, Daly's testimony was equivocal. He testified that he did not know

if he looked for tax returns that were responsive to the Plaintiff's requests:

> Q.    What year did 5647-53 North Clark Street file a tax return?
>
> A.    I don't know. They filed them every year up until, I don't know,
> 2020 or something.
>
> Q.    Is that it? Not 2021?
>
> A.    I don't know. I don't remember.
>
> Q.    Okay. Did you look -- did you go and check when you were
> responding to my discovery requests?
>
> A.    2021? Was that property or did -- is that property still owned by
> me in 2021?
>
> Q.    My question is very simple. Did you go back and you look at those

---

[4] In his response to interrogatory #1, Daly had disclosed that he was the member and manager of Silver River Development, LLC-3313 N. Oakley Series ("Silver River-Oakley"). *See* Second Motion to Compel (Adv. Dkt. 83), Ex. 3, pp. 18–19.

tax returns to see whether or not they were responsive to our requests?

      A.     I don't know. I gave you whatever I had, I guess. I don't remember.

*Id.*, p. 87.

Daly's answer to interrogatory #16 did not list the reason why Spud Construction, Inc. had not filed tax returns since 2020. Second Motion to Compel (Adv. Dkt. 83), Ex. 3, pp. 24, ¶ 16 (emphasis in original). When Daly was asked about this and the extensions on the stand, his answer was vague:

      Q.     Okay. And what about Spud Construction?
Why haven't they filed tax returns since 2020?

      A.     There's a lot of reasons.

      Q.     Have you filed extensions for that one?

      A.     There was extensions filed. I don't know how many. I don't know if they were filed in '21 or '22. I don't remember.

*See* Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 87–88.

Daly was asked about his personal tax returns, but also gave an equivocal answer:

      Q.     Okay. What about your personal tax returns? Why haven't those been filed since 2020?
Hasn't your wife been working?

      A.     The others have to be done first.

      Q.     Have you filed extensions for you and your wife?

      A.     I think we have. Again, I don't know.

*Id.*,p. 88.

Daly also admitted that his answer to interrogatory #16 did not respond to the portion of that interrogatory that asked for the "reasons" why entities Daly was affiliated with did not file tax returns

and/or written requests for extensions at the hearing:

> Q.    In your answer to Interrogatory Number 16, you do not provide the reason that tax returns were not filed or when extensions were filed, is that correct?
>
> A.    You said Number 16?
>
> Q.    Yes.
>
> A.    What's the question?
>
> Q.    You didn't answer that interrogatory? You didn't answer which entities didn't file tax returns? You didn't answer which ones filed extensions? You didn't answer why extensions were filed? You didn't put those answers in there, right?
>
> A.    We talked about Spud Construction, yes.
>
> Q.    And for all the other entities we just talked about, you didn't mention any of those in the interrogatory answer, did you?
>
> A. We didn't say anything in here, no.

*Id.*, p. 91.

Daly's answer to interrogatory #16 only identified one entity (Spud Construction, Inc.) that had filed tax returns (which he said were filed through 2020) and he did not disclose the reason the entity did not file a tax return. It is clear from his testimony that other entities that he did not list in his answer to interrogatory #16 besides Spud Construction, Inc. had not filed tax returns—he testified that Silver River-Lincoln did not file tax returns because all units of the property had not yet been sold and Silver River-Oakley did not file tax returns, although he did not give a reason. *Id.*, pp. 80–82, pp. 85–86. Thus, it is clear that Daly's answer to interrogatory #16 was incomplete, since there were entities that did not file tax returns that were not disclosed in his answer.

Interrogatory #23 requested information about construction work performed at the property located at 4863 N. Ashland St., Chicago, Illinois that was owned by 4863 North Ashland, LLC:

23. **Describe all construction work performed at the property owned by 4863 LLC, which is located at 4863 N. Ashland St., Chicago Illinois** ("Ashland Property"), during the Relevant Period, and identify all workers and/or contractors that performed work at the Ashland Property, **the dates the work was completed,** and **the amounts paid by 4863 LLC for that work,** identify [sic] of the person who chose the construction company and/or workers to use, identify the person who hired the construction companies and/or workers to do the work, and identify the person who authorized that work completed. Also identify all persons that have knowledge of the work performed.

Second Motion to Compel (Adv. Dkt. 83), Ex. 3, pp. 26–27, ¶ 23 (emphasis added).

In his answer, Daly described construction work that Spud Construction, Inc., performed at the property, but did not identify the dates the work was completed or the amounts 4863 N. Ashland, LLC paid for that work:

> **Answer:** **Spud** Construction, Inc., as general contractor, **obtained a permit, conducted tree removal, ordered a fence** from Driven Fence, **ordered a port-a-potty** from Service Sanitation, **performed shoring, poured concrete walls and foundation,** and **performed damp proofing** on concrete. In addition, Spud Construction, Inc. employed Quality Excavation to perform demolition work and provide excavating services. Finally, Spud Construction, Inc. procured bricks from General Shale, rebar from Chicagoland Limestone, sand and other materials from Elston Materials in preparation for masonry work, but no masonry work was performed. **Defendant cannot recall the dates of work, amounts paid, or the names of actual workers.** Defendant and Mary Daly have knowledge of the work performed as well as, upon information and belief, employees of Quality Excavation.

*Id.*, p. 27 (emphasis added).

However, at the October 8, 2025 hearing, Mr. Daly was able to give more information about the cost of the work performed at 4863 N Ashland St., Chicago, Illinois than he provided in his answer. He testified that 4863 N Ashland, LLC paid Spud Construction $200,000 for the following work performed at the property:

| | |
|---|---|
| Concrete services: | $60,000 |
| Permit: | $12,000 |
| Port-a-potties: | $ 1,500 |

-29-

| | |
|---|---|
| Bricks and other masonry materials: | $15,000 |
| The neighbor's concrete: | $13,000 |
| Damp proofing: | $ 3,000 |
| Tree removal: | $ 3,500 |
| Shoring: | $37,000–38,000 |
| Fencing: | $ 4,000 |
| | |
| Total: | $149,000–150,000 |

*See* Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 60–65.[5]

Daly's testimony shows that his answer to interrogatory #23 was evasive and incomplete, since his answer stated "Defendant cannot recall the dates of work, amounts paid, or the names of actual workers," but he was able to testify about the cost of the services in court. *See* Fed. R. Civ. P. 37; Fed. R. Bankr. P. 7037; *In re Wolf*, 566 B.R. 233, 235 (Bankr. N.D. Ill. 2017). Daly's failure to appropriately answer this interrogatory constitutes a failure to comply with court-ordered discovery. *See In re Wolf*, 566 B.R. 233, 235 (Bankr. N.D. Ill. 2017) (citation omitted).

Since these services total $149,000–150,000 and Daly confirmed at the October 8, 2024 hearing that Ashland paid Spud $200,000 for the services, based on Mr. Daly's testimony, it appears that Spud was paid around $50,000 more than the value of the services it performed. *See* Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 60–65.

When Daly was asked if there was anything else in his answer to Interrogatory #23 that he believed constituted the $200,000 that was paid to Spud Construction, Daly testified that "Spud was paid for general contracting operations." *Id.*, p. 69. He testified that he did not "recall offhand" how

---

[5] At first, Daly testified that Spud was paid for the following services for the project: concrete = $60,000, permit = $12,000, port-a-potties = $1,500, bricks and other masonry materials = $15,000, and fencing $4,000. Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 60–63. Those services total $92,500.

However, when Mr. Khanna asked why Spud was paid over $110,000 more than the value of the services it rendered (since Spud was paid $200,000), Mr. Daly testified that there was more work done: replacing the neighbor's concrete sidewalks in the front and back = $13,000, damp proofing = $3,000, tree removal = $3,5000, shoring = $37,000–38,000. *Id.*, pp. 63–65.

much Spud was paid for this, but "initial deposits are usually on something like that about somewhere between 25 and 40 percent of the general contracting fee." However, Daly was unable to give any more details about the general contracting fee or whether there were any documents evidencing the agreement between Spud and Ashland:

> Q.   And what was the general contracting fee?
>
> A.   That I don't know either. It would be someplace probably around that's usually about 10 to 15 percent of the construction costs.
>
> Q. What was [sic] the construction costs?
>
> A. I don't remember.
>
> Q. Is [sic] there any documents out there whatsoever that would evidence what the agreement was between 4863 North Ashland, LLC, and Spud Construction for its general contracting services?
>
> A. I don't remember. Because I know all this stuff happens upon activation of the construction loan.

*Id.*, pp. 69–70.

However, Daly's testimony also suggested that Ashland did not obtain or was not approved for a construction loan for the project:

> Q.   I just want to clarify for the record your testimony is that 4863 North Ashland, LLC, has never obtained or was approved for construction loan, is that correct?
>
> A.   I don't think it was ever finalized. At the end, it was 4863 North Ashland, LLC. Maybe something happened there before I knew about it.

*Id.*, p. 68.

Because Daly testified that the $200,000 paid to Spud also covered the cost of Spud's general contracting operations (which was usually around 10-15% of construction costs), which usually

"happens upon activation of the construction loan," but he did not think a construction loan was finalized here, it is unclear how much Spud's general contracting operations services cost and how much Spud was paid for them. *Id.*, pp. 60–68. Based on Daly's testimony, it appears that Spud may have been paid for general contracting operations before the costs of said services was calculated and/or before Ashland was able to obtain a construction loan.

Interrogatory #16 asked about tax returns filed by entities Daly was affiliated with:

16. Have all entities that Daly has an Affiliation, either currently, or had an Affiliation with, during the Relevant Period, filed annual tax returns and/or requested, in writing, extensions of time to file tax returns with the IRS, since those entities were formed? If not, **identify which such entity did not file tax returns and/or written requests for extensions, which years they did not file tax returns and/or written requests for extensions, and all reasons they did not file tax returns and/or written requests for extensions.**

**Answer:** Spud Construction, Inc. filed tax returns through 2020.

Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p. 24, ¶ 16 (emphasis added).

### B. The Requests for Production

The Requests for Production will be referred to as "Document Requests." Many of the Bates-stamped documents that the Defendant-Debtor produced are included in the Plaintiff's Exhibits

The Plaintiff sought documents from January 1, 2021 to the present. However, Daly objected and asserted that this time period was "overly broad and unduly burdensome" and that, since the Plaintiff's complaint seeks a denial of discharge, the relevant period should be from January 1, 2021 until the Petition date. Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p. 3, ¶ 4. For purposes of this opinion, the "Relevant Period" referred to in these document requests is from January 1, 2021 up to May 16, 2022 (the petition date).

In its motion, the Plaintiff alleges that the Defendant-Debtor has not produced all of the documents that are responsive to the document requests, and thus the Defendant-Debtor's responses are unresponsive, evasive, and incomplete. Second Motion to Compel (Adv. Dkt. 83), ¶¶ 5–6. The Defendant-Debtor's response to Document Request #43 provides an illustrative example of these allegedly deficient responses.

Document request #43 requested documents regarding payments from 4863 LLC to Spud:

> 43. All documents evidencing the reasons for all monies paid by 4863 [N Ashland] LLC to Spud during the Relevant Period.

> ANSWER: Defendant is still searching for documents responsive to this request and will produce any when located.

Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p. 13, ¶ 43.

At the hearing, Daly admitted that it had been five (5) months since he wrote that he was still searching for documents in his answer, even though he had "invoices from the material people" that he had not produced. Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 53–55.

Daly admitted that 4863 N Ashland was paying Spud around $200,000 without any invoices for any of the work that Spud did. *Id.*, pp. 52–54, 60. He said Spud had a contract with 4863 North Ashland to be the general subcontractor or subcontractor on its property, but the contract "goes to the bank" for the construction loan and "[i]t may not have been finished." *Id.*, pp. 56–58. He admitted he had not produced any contract between Spud and 4863 North Ashland.

Mr. Daly also appeared to admit that there may have been other documents—receipts of these payments—that were not produced:

> Q. Okay. So let's break it down. So you're saying for concrete services, Spud was paid $60,000. What were they paid for the permit?

A.   12,000 approximately.

Q.   Okay. And port-a-potties?

A.   Probably about maybe for the time it was there about 1500.

Q.   Okay. And bricks and other masonry materials?

A.   Probably for materials for the masonry that were paid for about 15,000.

Q.   15,000. And that -- okay. And you don't have any receipts for any of those payments, correct?

A.   Uhm, I could probably dig them out.

Q.   Okay. But you didn't produce them when we requested it in the document request, correct?

A.   Uhm, which section asked me to produce those?

MR. SCHECHTER:   I am going to object to that question anyway because he already testified they were in the bank statements.

MR. KHANNA: Again, I'm asking for receipts.

THE WITNESS: There weren't receipts.

Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 61–62.[6]

Then, Mr. Daly testified that "[t]here are no receipts. I can get receipts probably from the suppliers." *Id.*, p. 63. The receipts were not produced.

When asked why Spud did not invoice Ashland for the work, Daly testified "[i]t it wasn't relevant until we went in for the construction loan." *Id.*, p. 60. He also testified that the work for this project was done before obtaining the construction loan. *Id.*

---

[6] Mr. Schechter's objection was overruled. *Id.*, p. 63.

Daly testified that Ashland was "not yet" given an invoice for the work, but this would be "straightened out" when "the project starts up again." *Id.*, p. 65.

When asked why he would invoice Ashland after he had already been paid for the work, Daly testified that usually "waivers" instead of invoices are used in construction. *Id.*, p. 65–66. Daly said he brings in waivers to the bank for the work that he and Spud have done "before" he opens the construction loan." However, he testified that Spud had already been paid for the work and he was not expecting payment from the construction loan for this work because "[t]hat's all paid for." *Id.*, p. 66.

So, it appears that Ashland paid Spud before a construction loan was obtained. Daly's testimony suggests there were some invoices that were responsive. It is not clear whether there was a contract or receipts that had not been produced. *Id.*, pp. 53–66. As a result, Daly's answer to Document Request #43 is incomplete.

Document request #44 sought "[a]ll tax returns and/or **requests for extensions** to file tax returns filed by Defendant and/or the Daly Affiliates during the Relevant Period." Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p. 13, ¶ 44 (emphasis added. Mr. Daly's answer thereto stated "See answer to request #1."

Document request #1 sought "[a]ll federal and state Tax returns for Defendant for tax years 2009 through the present." Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p. 3, ¶ 1.

In response, per Daly's answer, he produced some tax returns:

> ANSWER: Defendant objects to the production of federal and state tax returns for the years 2009 through the present as being overly broad and unduly burdensome and not likely to lead to any discovery of relevant and admissible information. Having said that, Defendant produces herewith documents in his possession or under his control responsive to this request Bates-stamped 0001-0178.

Second Motion to Compel (Adv. Dkt. 83), Ex. 3, pp. 3–4, ¶ 1.

At the October 8, 2024 hearing, Daly's testimony suggested that extensions to file tax returns may have been filed, but they likely had not been produced:

> Q.    Let me see here. While I look for that, which -- here we go.
> Number 44 on Exhibit 5. So go to Exhibit 5, Page 12, Number 44. It says: All tax returns and requests for extensions to file tax returns.
>
> A.    I guess I overlooked it.
>
> Q.    Okay.
> You didn't produce those, is that correct?
>
> A.    I don't remember if I did or not. But I don't remember them, so I'm assuming maybe I didn't.

Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 75–76.

At that hearing, Daly's counsel, Mr. Schechter, claimed that the extensions may have been produced in connection to with Daly's answer to Document Request #1 in documents that are Bates stamped from 1 to 178. *Id.*, p. 76. Mr. Schechter said "I don't know if the extensions are there or not." *Id.*, p. 77. He did not identify a specific page(s) where said extensions were produced if they were produced. *Id.*, pp. 76–77.

The court finds that the Defendant-Debtor could not refute the Plaintiff's allegations that the extensions were not produced.  Given that Mr. Daly also testified that he did not remember whether he had looked for tax returns that were responsive to the Plaintiff's discovery requests, which suggests he has a cavalier attitude toward discovery compliance in this case, the court finds Daly's response to document request #44 is incomplete.

Document Request #12 requested "[a]ll documents pertaining to income earned by Defendant that was not deposited into his bank or investment account(s), during the Relevant Period, including,

but not limited to, monies from third parties that were used to pay creditors, vendors, service providers, lenders and/ or insurers of Defendant. *See* Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p. 6, ¶ 12.

Document request #18 requested "[a]ll documents evidencing all wages and income paid to Defendant from all sources during the Relevant Period, including, but not limited to all payroll records indicating wages and/or salary paid to Defendant, paychecks, W-2 Forms, tax returns, and 1099 Forms." *See* Plaintiff's Ex. 5, ¶ 18; *see also* Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p. 7, ¶ 18.

Defendant-Debtor's answer to both Document Request #12 and #18 stated that "Defendant has no documents in his possession or under his control responsive to this request." *See* Second Motion to Compel (Adv. Dkt. 83), Ex. 3, pp. 6–7, ¶¶ 12, 18.

At the October 8, 2024 hearing, the Plaintiff's counsel asked the Defendant-Debtor about line 8a. of Debtor's Schedule I in his bankruptcy case, which lists "net income from rental property and from operating a business, profession, or farm" in the amount of $7,500. Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 94–95; *see* Plaintiff's Ex. 10, p. 2.

Daly's testimony suggested Spud had paid his personal expenses and that there may be documents—Spud's bank statements—evidencing payment of his personal expenses:

> Q.   So what documents do you have that support the $7,500 you have listed in your bankruptcy schedules?
>
> A.   I don't know. What is this sheet here?
>
> Q.   What is this Exhibit 10?
>
> A.   Yeah, the thing with the -- this (indicating)?

Q.     Yes. That's your bankruptcy schedule that you filed in this bankruptcy court indicating what your income is.

A.     All right.

Q.     And here you're saying you have $7,500 in income on the second page. Do you see that under 8a?

A.     Okay.

Q.     Okay. And what is that money consisting of? What is that $7,500?

A.     I don't remember this.

Q.     So what is your monthly income?

A.     **To get my monthly income I would have to go through my Spud Construction bank statements.**

Q.     Okay.

A.     **And figure what I paid out from there. That's my monthly income.**

Q.     And you did this calculation, is that correct? Before you filed this bankruptcy schedule?

A.     Uhm, I don't remember. I don't remember this.

Q.     Okay.

A.     I remember we probably did a bankruptcy schedule at the time, yes.

Q.     Okay. And you're saying that income consisted of your personal expenses that were being paid, is that correct? That $7,500 number?

A.     Yeah.

Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 96–97 (emphasis added).

Later, on October 11, 2024, when asked where Daly came up with the $7,500 amount found in Plaintiff's Schedule I, line 8a (Plaintiff's Exhibit 10, p. 2), Daly testified that he calculated this

-38-

amount "[b]y going back through my expenses" and he "[p]robably looked at the expenses that I paid

from the Spud Construction where I paid my bills from" in coming up with that number. Oct. 11,

2024 Hr'g. Tr. (Adv. Dkt. 94), pp. 121–122.  However, when asked if the $7,500 only consisted of

Daly's personal expenses paid from Spud, Daly testified, "I don't know." *Id.*, p. 122.

Document request #3 sought bank account records for which Daly was a signatory:

> 3. For each bank account for which Defendant is currently, and/or was, a signatory, that is currently open as of the date these requests for documents were served, provide a copy of the monthly statement and copies of all checks deposited into and withdrawn from those accounts, for the Relevant Period.

> ANSWER: Defendant produces herewith documents in his possession or under his control responsive to this request Bates-stamped 0179-0478.

Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p. 4, ¶ 3.

The documents the Defendant-Debtor provided in response to document request #3 can be

found in Plaintiff's Exhibit #6, Bates stamped #0179 through #0189.

For context, as previously explained, the "Relevant Period" for purposes of the document

requests spans from January 1, 2021 through the petition date, May 16, 2022.  Second Motion to

Compel (Adv. Dkt. 83), Ex. 3, p. 3, ¶ 4. However, at the October 8, 2024 hearing, Plaintiff's counsel

identified several bank accounts for which the most recent statement produced by the

Defendant-Debtor predated the petition date—indicating that statements from later in the Relevant

Period were not provided.  Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 101–106.

For example, Plaintiff's Exhibit 6, Bates stamped #0189 is a bank statement for a joint

account held by the Defendant-Debtor and his wife, Sandra Daly, at TCF Bank (now part of

Huntington Bank).  The bank statement covers the period from September 27, 2021 through October

11, 2021, and reflects a balance of $391.91. *Id.*  At the October 8, 2024 hearing, Mr. Khanna

demonstrated this statement—Plaintiff's Exhibit 6, Bates stamped #0189—was the most recent bank

statement produced by the Defendant-Debtor for this account:

> Q.     So in Request Number 3, I asked for each bank account, for every account that you're a signatory, and that is currently open.
> And, for example, let's look at exhibit -- this may be highlighted better.
> Exhibit 6. This is for the relevant period that he we asked, and your Exhibit 6 contains, let's see, the final bank statement you produced to us, which is Bates Stamp 189 on Exhibit 6, which is from September 27, 2021, through October 11, 2021, and you see it has a balance of 391.91?
>
> A.     Yes.
>
> Q.     Okay. Why didn't you produce the following bank statements that were within the period that your attorney didn't object to?
>
> A.     I'm pretty sure that 391.91 is probably still on it.
>
> Q.     Okay.
>
> A.     I don't know why I didn't.
>
> Q.     Okay. But you didn't produce any other documents, any other bank statements for this account in your name after this last bank statement, did you?
>
> A.     For this account?
>
> Q.     Yes.
>
> A.     No, I did not.

Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 101–102.

At that hearing, Mr. Khanna identified an Ally Account regarding debt that Mr. Daly owed

for a 2019 Jeep Wrangler for which the last statements provided were from April 2022, indicating

that statements from April 2022 was not provided.  Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp.

102–104; Plaintiff's Ex. 7, Bates stamped #0491–0494.  When asked about this, Mr. Daly did not

refute this allegation or identify where the later statements for this account were produced. Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), pp. 102–104. The statements Mr. Khanna is referring to may be found at Plaintiff's Exhibit 7, Bates stamped #0491 through #0494. The last statement, found at Plaintiff's Exhibit 7, Bates stamped #0493, reflected payments received through April 18, 2022 and had a due date of May 7, 2022, indicating that payments through May 16, 2022 (the petition date) had not been provided.

Plaintiff's Exhibit 8, Bates stamped #0495 through #0496 included a monthly auto loan statement from Capital One with a statement date of April 14, 2022 for a debt that Daly owed for a Ford Escape; it stated that $406.82 was due by May 5, 2022. When asked where the May 2022 statement up to the petition date was for this account, Daly testified that he was unsure if he had produced it:

> Q.     Same with let's go to Exhibit 8. Again, here is another statement. This statement is from April 14, 2022. Where is the statement that covers the period from April 14, 2022, to May 16, 2022?
> You never produced it, did you?
>
> A.     You have one statement in here, and I don't know if I did or if I didn't. I don't know if I gave you the ones before this I don't know.
> I'd have to check that.
>
> Q.     Okay.
>
> A.     Because things go missing sometimes.

Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), p. 105.

Document request #6 seeks financial information that Daly or entities Daly was previously or is currently affiliated with:

6. Provide all bank, investment and other financial account statements for all bank accounts in which Defendant, the Daly Affiliates and/or other entities with which Daly was or is affiliated, are a signatory, during the Relevant Period.

Second Motion to Compel (Adv. Dkt. 83), Ex. 3, pp. 5–6, ¶ 6.

At the October 8, 2024 hearing, when questioning Daly about his response to Document Request #6, the Plaintiff's counsel asked about a payment Daly made to his daughter using digital currency:

> Q.      This asks for all bank investments and financial account statements. Now, in your bankruptcy schedules, you disclose in Section 17.3 a coin-based account for$185.75, and then also in your bankruptcy schedules you disclose a payment on Number 18 of your statement of financial affairs of payments you made including a digital payment to your daughter of over $8,000. From a cyber account.
>         Now, in Number 6, I asked you for all accounts and statements, and you disclosed an alleged cyber account, but you have not produced those statements for that account, have you?
>
> A.      I don't know. I don't remember.

Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), p. 107.

In response to the court's clarifying questions, Mr. Khannah characterized this payment from Daly to his daughter in exchange for legal services as being in the form of digital currency having an approximate value of $8,739. *Id.*, p. 108. Daly did not testify about what the payment was for and its approximate value, however.

After Daly's counsel, Mr. Schechter, objected to Mr. Khannah's characterization of this as a "cyber account," Mr. Khannah rephrased the question about the account:

> Q.      Yes. So why didn't you produce the statements from that account that you paid your daughter from?
>
> A.      When was this supposed to be?

Q.      When was what supposed to be?

A.      I produced these earlier, right?

Q.      You produced what?

A.      I produced them, right?

Q.      No, you never did. Is there a reason you didn't produce them?

A.      I'm pretty sure I did at one point.

*Id.*, pp. 108–109.

The Defendant-Debtor's response is illustrative of the evasiveness and ambiguity of Daly's responses because although he asserts multiple times that he produced the documents regarding this digital payment, he does not identify where said documents have been produced or give details about the account or payment.

Document request #34 requests "[a]ll utility account statements for all utilities at all residences of Defendant during the Relevant Period." Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p. 10, ¶ 34. However, Daly admitted that he only provided water bills, even though he testified that his home uses other utility services—heat, gas, and electricity. Oct. 11, 2024 Hr'g. Tr. (Adv. Dkt. 94), p. 135–38. His testimony indicates that there were heat, gas, and electric bills that had not been produced.

At the continued hearing on October 11, 2024, Daly testified that "[o]n occasion, all those utilities were paid by Spud as income for me." Oct. 11, 2024 Hr'g. Tr. (Adv. Dkt. 94), pp. 157–58. He testified that this month, Spud "[m]ay have paid my mortgage, my gas bill I'm sure, water bill,

utilities, all the utilities." *Id.*, p. 159. He said "in the past" Spud paid his car payments. *Id.*, pp. 159–60. This was not disclosed in his answer.

For the reasons explained above, the Plaintiff has met his burden to show that not all of the responsive documents requested were produced. *See Equal Rights Ctr.*, 246 F.R.D. at 32.

The court also notes that on October 8, 2024, the Defendant-Debtor also appeared to supplement his answer to document request #14, which requested "[a]ll documents relating to rental real property by Defendant or the Daly Affiliates, as either a landlord or tenant, during the Relevant Period." Second Motion to Compel (Adv. Dkt. 83), Ex. 3, p. 7, ¶ 14; Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), p. 113. At that hearing, Defendant-Debtor's counsel, Mr. Schechter, stated that the Defendant-Debtor would stipulate that there were leases at Plaintiff's Exhibits 11 and 12 that were in Daly's possession or in the possession of the Daly Affiliates. Oct. 8, 2024 Hr'g. Tr. (Adv. Dkt. 93), p. 113.

Plaintiff's Exhibit 11 is a lease entered into on February 23, 2021 between Sugarwax, LLC (the lessee) and Silver River Development, LLC (the lessor), concerning property located in Chicago, IL. The stated lease term appears to run from September 1, 2021, through August 31, 2026. Plaintiff's Ex. 11, p. 1. Mr. Daly, the Defendant-Debtor, signed the lease on behalf of Silver River Development, LLC, while Noreen Daly signed the lease on behalf of Sugarwax, LLC. *Id.*, pp. 1, 6.

Plaintiff's Exhibit 12 is a lease agreement concerning the property located at in Chicago, entered into by Aerial Fitness & Yoga as the lessee and Silver River Development, LLC as the lessor. Although the lease is dated June 10, 2019, the stated lease term runs from August 15, 2019, through August 14, 2024. Plaintiff's Ex. 12, p. 1. Mr. Daly signed the lease on behalf of Silver

River Development, LLC on February 12, 2020, and Leisan Valitova signed the lease on behalf of Aerial Fitness & Yoga. *Id.*, p. 10.

On October 11, 2024, Daly testified that he remembered entering into these leases on behalf of the lessor entities that he signed for on these leases. Oct. 11, 2024 Hr'g. Tr. (Adv. Dkt. 94), p. 124. Daly testified he did not recall collecting rent from the lease with Sugarwax, which is his daughter's company. *Id.* He testified that he collected "some rents" from Aerial Fitness and Yoga on behalf of Silver River Development. *Id.*, pp. 124–125.

He testified that the property being leased therein is owned by Silver River Development, LLC-2815-19 Lincoln Series ("Silver River-Lincoln"). *Id.*, pp. 129–30. However, rents were not paid to Silver River-Lincoln or Silver River Development, LLC. *Id.*, p. 130. Silver River Development, "the parent company," did not have a bank account. *Id.*, p. 125–26.

He testified that rents were paid to Spud Construction, "[b]ut it went back into the building . . . ." *Id.*, pp. 125–26, 130. The rents "[w]ere deposited into Spud Construction and then paid back for construction on the property to subcontractors." *Id.*, p. 125.

### C. Subpoena

Federal Rule of Civil Procedure 45 is applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 9016. The Plaintiff alleges that nonparties, Spud and Ashland failed to comply with the Plaintiff's subpoenas, as they failed to produce any responsive documents. Motion for rule to Show Cause (Adv. Dkt. 69), ¶¶ 1– 12. The subpoena rider issued to Ashland is located in Plaintiff's Ex. 13. The subpoena rider issued to Spud is in the Motion (Adv. Dkt. 69), Ex. 1, pp. 43-45. The subpoenas were issued to Daly in his alleged representative capacity of 4863 North Ashland, LLC and in his representative capacity of Spud Construction, Inc. *See* Plaintiff's Ex. 13,

p. 1 (4863 North Ashland, LLC subpoena); Plaintiff's Ex. 14, p. 1 (Spud Construction, Inc. subpoena). Both subpoena riders contained requests for documents. Plaintiff's Ex. 13, pp. 4–6; Motion Ex. 1, 43-45.

In their response to the motion for a rule to show cause at Docket 69, Spud and Ashland argue the subpoenas should be quashed because the documents have already been produced, either in state court via the Citation directed to Ashland or in this adversary proceeding via the Document Requests issued to Mr. Daly. Response to Second RSC (Dkt. 77), pp. 1–5. However, Daly's testimony at the hearings in this matter suggests otherwise.

Regarding the subpoena to Spud Construction, Inc. (Plaintiff's Ex. 14), when Daly was asked if he produced responsive documents to document request #13, he testified "No, I didn't produce any documents for that." Oct. 11, 2024 Hr'g. Tr. (Adv. Dkt. 94), pp. 191–92. When he was asked if he produced responsive documents to document requests #7, 11, 14, 17, 19, and 21 in the state court proceeding, Daly said "I don't remember." *Id.*, pp. 187–93. When he was asked if he produced responsive documents to document requests #18 in state court, he said "I don't know." *Id.*, p. 193.

At the October 11, 2024 hearing, with respect to the subpoena to 4863 North Ashland, LLC (Plaintiff's Ex. 13), the Debtor's counsel, Mr. Schechter, asserted that the subpoena was directed to Mr. Daly in his representative capacity of 4863 North Ashland, LLC, but "[M]r. Daly has consistently testified that he's got no representative capacity in that LLC." Oct. 11, 2024 Hr'g. Tr. (Adv. Dkt. 94), p. 194. Regarding that subpoena, when Daly was asked if he produced responsive documents to the document requests in that subpoena in state court, Daly's testimony on whether responsive documents had been produced was very evasive.

-46-

His testimony regarding whether documents had been produced in response to document request #8 in that subpoena provides an illustrative example:

> Q.     For Number 8, did you produce any documents relating to 4863 North Ashland in this request?
>
> A.     Number 8 you said?
>
> Q.     Yes.
>
> A.     Produce all organization documents. That's --
>
> Q.     Again, whenever it says "you," it means 4863 North Ashland.
>
> A.     I don't know if I was able to produce that.
>
> Q.     Okay.
>
> A.     I don't remember.
>
> Q.     Okay. You don't remember if you were able to produce it? Is that what you said?
>
> A.     No. I don't remember what happened here during this time.
>
> Q.     Okay. Give us any reason why you wouldn't be able to produce those documents?
>
> A.     If I -- I shouldn't be able to produce these documents. The only way I would is if I got them from the people who are involved in the LLC.
>
> Q.     And did you get those from the people --
>
> A.     I don't remember if I did or if I didn't.

*Id.*, pp. 196–97.

When he was asked if he produced responsive documents to document requests #7, 10, 12, and 14, Daly said "I don't remember." *Id.*, pp. 196–99. When he was asked if he produced

-47-

responsive documents to document requests #11 in state court, he said "I don't remember this document." *Id.*, p. 199. When asked if he produced responsive documents to request #15 in state court, he testified "I don't recall this stuff." *Id.*, pp. 199–200. He said "I don't recall" when asked if he recalled producing responsive documents to request #16 in state court. *Id.*, p. 200.

At the November 8, 2024 hearing, with respect to the subpoena rider to Ashland, Mr. Khannah argued that the documents sought by subpoena rider numbers 11 through 15 were never sought in state court. Nov. 8, 2024 Hr'g. Tr. (Adv. Dkt. 96), p. 263. Regarding Spud, he argued that the documents requested by subpoena rider numbers 11 through 14, 16 through 19, and 21 were not requested in state court. *Id.*, p. 264.

At that hearing, Mr. Schechter argued the noncompliance with Ashland's subpoena was because the subpoena was due to the fact that the subpoena was issued to Daly in his representative capacity of Ashland, but "Mr. Daly is not the representative interest person of 4863." *Id.*, p. 279. Mr. Schechter stated that Daly's relationship to Ashland was that Spud (an entity 100% owned by Daly) was the general contractor for Ashland. *Id.*, pp. 279–80. Schechter stated that Daly has no membership or management interest in Ashland and the owner of Ashland is Daly's daughter, Mary Daly. *Id.*, p. 280.

Regarding the Spud subpoena, Mr. Schechter argued that the documents requested in the subpoena to Spud are "are subsumed in the document request that was served on Mr. Daly in connection with the adversary." *Id.*

Mr. Khannah further argued that Mr. Schechter's reply brief in support of his motion to quash the subpoenas filed on July 26, 2024 in the bankruptcy case shows there is "no duplicity" between

what Mr. Khannah is asking for in this proceeding and in the underlying state court action. *Id.*, p. 281.

At the end of the hearing, Mr. Khannah stated that the state court was waiting for a ruling regarding whether or not Mr. Khannah was "entitled to Spud's recent documents." *Id.*, pp. 282–83. By recent documents, it appears he meant documents from Spud up to the date of filing. This court will not comment on maters before a different judge.

Fed. R. Civ. P. 45(g) provides that the court may hold a person in contempt who was served with a subpoena, but "fails without adequate excuse to obey the subpoena . . . ." The court notes that under Fed. R. Civ. P. 45, rules to show cause have already been entered against Spud and Ashland. Order (Dkt. 80) (referencing the "Spud Rule" and "Ashland Rule"). A Rule to Show Cause was also entered against Daly in his capacity as Spud's President and/or sole shareholder. *Id.*

Based on Mr. Daly's testimony, responsive documents to many of the document requests issued to these two subpoenaed entities have not already been produced. Mr. Daly testified that responsive documents to request #13 of the subpoena rider to Spud had not been produced in state court. Oct. 11, 2024 Hr'g. Tr. (Adv. Dkt. 94), pp. 191-92. For many of the other document requests in both the subpoena to Spud Construction, Inc. (Plaintiff's Exhibit 14) and the subpoena to 4863 North Ashland, LLC (Plaintiff's Exhibit 13), Daly testified that he did not know, did not remember, or did not recall if responsive documents to those subpoenas had been produced in state court. Oct. *Id.*, pp. 187-200. This suggests the subpoenas have not been complied with.

Here, the court could hold Spud and Ashland in contempt for their failure to comply with the subpoenas. However, since the court finds that entry of a default judgment against Daly is

appropriate for the reasons described herein, the court declines to hold Spud, Daly, and Ashland in contempt.

## V. Conclusion

For the reasons described herein, the court finds that the Debtor/Defendant Patrick J. Daly has not carried out his discovery obligations. He has failed to obey the court order entered on May 7, 2024 requiring him to complete outstanding discovery.

The court strikes the Answer to the Amended Complaint filed herein at Docket 57 on January 23, 2024.

The court defaults him on the Amended Adversary Complaint. A default judgment is hereby entered against Debtor/Defendant Patrick J. Daly pursuant to Fed. R. Civ. Pro. 37(b)(2)(A)(vi)..

Judgment is entered in favor of the Plaintiff Richard J. Zell on all Counts and against the Debtor/Defendant Patrick J. Daly

The Debtor/Defendant Patrick J. Daly is hereby denied a discharge pursuant to 11 U.S.C. § 727(a)(2) on Count I.

The Debtor/Defendant Patrick J. Daly is denied a discharge pursuant to 11 U.S.C. § 727(a)(5) on Count II.

The Debtor/Defendant Patrick J. Daly is denied a discharge pursuant to 11 U.S.C.§ 727(a)(4)(A) on Count III.

The Debtor/Defendant Patrick J. Daly is denied a discharge pursuant to 11 U.S.C. § 727(a)(3) on Count IV.

.

With respect to Spud's recent documents, the court does not take a position on whether or not they are discoverable in the state court case.

A separate judgment order will be entered.

**Date:** April 11, 2025                    **ENTER:** _____

Hon. Jacqueline P. Cox
Chief U.S. Bankruptcy Judge
Northern District of Illinois